[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12108
Non-Argument Calendar

_____

Agency No. A208-536-732

JOHIRUL ISLAM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 11, 2021)

Before WILLIAM PRYOR, Chief Judge, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Johirul Islam, a native and citizen of Bangladesh, petitions for review of an order affirming the denial of his applications for asylum and withholding of removal under the Immigration and Nationality Act and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. 8 U.S.C. §§ 1158(b), 1231(b)(3). The Board of Immigration Appeals agreed with the findings of the immigration judge that Islam was not credible and, in the alternative, that he failed to establish that he suffered past persecution or had a well-founded fear of future persecution or that he would be tortured if returned to Bangladesh. We deny Islam's petition.

Islam argues that the Board failed to give reasoned consideration to his arguments, but we disagree. The Board "considered the issues raised and announced its decision in terms sufficient to enable [us, as] a reviewing court to perceive that it . . . heard and thought and not merely reacted." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 874 (11th Cir. 2018) (quoting *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016)). The Board declined to summarily affirm the immigration judge's decision, as requested by the Department of Homeland Security, and addressed each of Islam's challenges to the adverse credibility ruling, to the denial of each form of asylum relief, and to the immigration judge's conduct during the removal proceedings. The Board accurately recounted the record, adequately explained its findings, and gave

2

reasonable grounds for its decision. The Board found that the factors relevant to credibility supported the immigration judge's adverse finding, *see* 8 U.S.C. § 1158(b)(1)(B)(iii); that Islam failed to prove he had been persecuted, had an objectively reasonable fear of future persecution, or would be tortured if he returned to Bangladesh; and that he had not been deprived of a full and fair removal hearing. And the Board was not required to address every piece of evidence Islam presented or case he cited. *See Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006).

Islam argues that the immigration judge was hostile and biased, but the record shows that Islam received a full and fair hearing. *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). Islam complains about remarks regarding his ethnicity and native language, but the immigration judge reasonably inquired about Islam's preferred language and instructed him to answer questions precisely. And the immigration judge was entitled to ask Islam tough questions. *See* 8 U.S.C. § 1229a(b)(1) ("The immigration judge shall . . . interrogate, examine, and cross-examine the alien and any witnesses."). The immigration judge suggested that Islam could testify in English because he worked in customer service at a grocery store, but nonetheless protected his rights by providing him a Bengali interpreter. Even so, Islam sometimes answered questions in English before the translator finished speaking. Islam also complains about his attorney

3

being "chided," but the immigration judge requested "help from both counsel" to compile exhibits, expressed surprise that Islam's attorney "only ke[pt] digital files," requested that she bring paper copies "for future hearings" in case the court or the government did not have their copy, and became irritated only when the attorney appeared unfamiliar with her exhibits. The immigration judge's desire to streamline the hearing did not violate Islam's right to a "fair [hearing] in a fair tribunal." *See Callahan v. Campbell*, 427 F.3d 897, 928 (11th Cir. 2005).

Substantial evidence supports the finding that Islam was not credible, and the Board identified specific and cogent reasons to support that finding. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006). Islam gave nonresponsive answers and ignored the immigration judge's repeated instructions not to mumble. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Islam based his claim of persecution on his membership in and responsibilities as the "publicity secretary" for the Liberal Democratic Party, yet he attended its meetings only every "two or three months" and described it vaguely as a "democratic party" and the posters that he hung as bearing a "statement against the corruption and the bad governments of the government." Islam's testimony lacked any details about why he joined the Party or the agenda of any meeting he attended. Islam also gave inconsistent accounts of his and his mother's maltreatment by the opposition ruling party, the Awami League. In his written application for immigration relief and on direct

examination, Islam stated that members of the League beat him in December 2013, struck him in July 2014, made threatening phone calls, and then raided his mother's home in November 2014. But on cross-examination, Islam stated, for the first time, that members of the League made threatening phone calls and "occasionally" returned to his mother's house after the raid. But Islam later testified that his mother remained in Bangladesh without incident. Islam fails to explain how this record would compel a reasonable fact finder to reverse the adverse credibility finding against him and conclude that he established eligibility for any form of immigration relief. *See Chen*, 463 F.3d at 1233.

We **DENY** Islam's petition for review.